IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MARILYN SUE BURRIS,           )
                              )
                Plaintiff,    )
                              )
vs.                           )        Case No. 08-1006-MLB
                              )
MICHAEL J. ASTRUE,            )
Commissioner of               )
Social Security,              )
                              )
                Defendant.    )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

     The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

     Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

     On May 16, 2007, administrative law judge (ALJ) Michael R.
Dayton issued his decision (R. at 22-32).  Plaintiff is insured
for disability insurance benefits through December 31, 2002 (R.
at 24).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since January 15, 1999, the

alleged onset date (R. at 24).  At step two, the ALJ found that
plaintiff had the following severe impairments: scoliosis, mild
carpal tunnel (as of July 26, 2006), restless leg syndrome,
degenerative disc disease (DDD)-lumbar spine, and headaches (R.
at 24).  The ALJ also found that plaintiff had the non-severe
impairment of depressive disorder NOS (R. at 24).  At step three,
the ALJ determined that plaintiff's impairments do not meet or
equal a listed impairment (R. at 25).  After determining
plaintiff's RFC (R. at 25), the ALJ found at step four that
plaintiff could perform past relevant work, but also found that
these jobs may not constitute substantial gainful activity due to
the earnings amount and/or the duration of the jobs (R. at 29).
At step five, the ALJ found that plaintiff can perform other jobs
that exist in significant numbers in the national economy (R. at
29-30).  Therefore, the ALJ concluded that plaintiff was not
disabled (R. at 30).

**III.  Did the ALJ err in his step two findings?**

At step two, the ALJ found that plaintiff's depressive
disorder was non-severe.  In support of this finding, the ALJ
cited to the mental status examination conducted by Dr. Mintz (R.
at 24-25, 267-269).  The ALJ later cited to the examination by
Dr. Mintz when discussing the bases for his RFC findings (R. at
28).  The court finds that the ALJ accurately set forth the
summary and diagnostic impressions of the assessment by Dr.

Mintz.  The ALJ found that plaintiff had no restrictions in activities of daily living and no episodes of decompensation; the ALJ further found only mild difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace (R. at 24).  Those findings are identical to those set forth in the state agency psychiatric review technique form, which cited to the report of Dr. Mintz (R. at 300, 302).

In the recent case of <u>Brescia v. Astrue</u>, 2008 WL 2662593 at *1-2 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  Again, in <u>Hill v. Astrue</u>, 2008 WL 3339174 at *2 (10th Cir. Aug. 12, 2008), the court held that the failure to find that additional alleged impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining plaintiff's RFC, considers the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

In the case before the court (Burris), the ALJ found that plaintiff had numerous severe impairments, and found plaintiff's depression to be a non-severe impairment.  The ALJ then discussed plaintiff's depression and relied on the evaluation by Dr. Mintz when explaining the bases for his RFC findings.  Thus, the ALJ considered plaintiff's depression as part of his evaluation of plaintiff's RFC and made specific findings that it would not affect her ability to work (R. at 24-25, 28).  See Hill, 2008 WL 3339174 at *3.  Therefore, the court finds that the ALJ did not commit reversible error by failing to list depression as a severe impairment.

Plaintiff also alleges that the ALJ or the Appeals Council failed to make any mention of plaintiff's cervical spine impairment at step two.  The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work

activities.[1] <u>Williams</u>, 844 F.2d at 751.  However, the claimant
must show more than the mere presence of a condition or ailment.
If the medical severity of a claimant's impairments is so slight
that the impairments could not interfere with or have a serious
impact on the claimant's ability to do basic work activities, the
impairments do not prevent the claimant from engaging in
substantial work activity.  Thus, at step two, the ALJ looks at
the claimant's impairment or combination of impairments only and
determines the impact the impairment would have on his or her
ability to work.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir.
1997).

     A claimant must provide medical evidence that he or she had
an impairment and how severe it was during the time the claimant
alleges they were disabled.  20 C.F.R. § 404.1512(c),
§ 416.912(c).  The evidence that a claimant has an impairment
must come from acceptable medical sources including licensed
physicians or psychologists.  20 C.F.R. § 404.1513(a),
§ 416.913(a).  Evidence from other medical sources, including

---

     [1]Basic work activities are "abilities and aptitudes
necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)],
including "walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying or handling; seeing, hearing, and speaking;
understanding, carrying out, and remembering simple instructions;
use of judgement, responding appropriately to supervision,
coworkers, and usual work situations; and dealing with changes in
a routine work setting." Social Security Ruling 85-28, 1985 WL
56856 at *3.  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir.
2004).

therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

Plaintiff cites to no evidence that plaintiff's cervical spine impairment has more than a minimal effect on her ability to perform basic work activities.  The court finds that the ALJ adequately considered all of plaintiff's impairments which, based on medical opinion evidence, had more than a minimal effect on her ability to perform basic work activities.  Thus, the court finds no error by the ALJ because he failed to specifically mention plaintiff's cervical spine impairment.

Plaintiff also alleges the Appeals Council failed to expressly discuss plaintiff's sleep impairment.  However, plaintiff failed to provide any evidence that plaintiff's sleep impairment has more than a minimal effect on her ability to perform basic work activities.  Furthermore, the Appeals Council indicated that it considered the additional evidence submitted to it, but that this information did not provide a basis for changing the ALJ's decision (R. at 7-8).  There is no requirement in the statutes or regulations that would require a specific discussion of the additional evidence submitted to the Appeals Council, including the evidence pertaining to plaintiff's sleep impairment.  Foy v. Barnhart, 2005 WL 1526103 at *2-3 (10th Cir. June 29, 2005).

9

**IV.  Did the ALJ err in his analysis of the opinions of Dr. Mosier?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

On August 3, 2006, Dr. Kevin Mosier saw the plaintiff as a consultation from physician's assistant Mike Carter to evaluate plaintiff's back, neck, shoulder, hip and leg pain.  Dr. Mosier had previously seen plaintiff on January 22, 2001 (R. at 320).  Dr. Mosier concluded his report with the following findings:

> The patient's spine problems are chronic and definitely of greater than 12 months' duration...I feel the patient should avoid above-shoulder-level reaching type activities except on occasion.  The 10-pound lifting restriction does seem somewhat excessive to me.  I feel that the patient could easily be able to lift 20 to 30 pounds on an occasional basis; this, however, cannot be frequent or repetitive.  Similarly repetitive bending and twisting activities should be avoided.  Such activities I feel would tend to aggravate the patient's associated

11

degenerative processes of her spine.

(R. at 323).

The ALJ, after setting forth his RFC findings, stated the following:

> The residual functional capacity is consistent with the opinion of the Disability Determination Services (DDS) physicians as documented in Exhibit 10F. Their opinions are consistent with the evidence in its entirety. Therefore, the undersigned gives substantial weight to their opinions. The residual functional capacity is also consistent with the opinion of Kevin M. Mosier, M.D., a consultative examiner, who opined that the claimant can lift 20 to 30 pounds occasionally. (Exhibit 13F-98) The undersigned concurs with Dr. Mosier's opinion of the claimant's ability to lift 20 to 30 pounds occasionally. **However, the undersigned does not agree with the doctor's additional opinions such as that the claimant should avoid shoulder level reaching type activities except on an occasional basis. The doctor also concluded that the claimant should avoid repetitious bending and twisting activities. These limitations are not supported by the medical evidence.** Therefore the undersigned gives only partial weight to Dr. Mosier's opinion of the claimant's functional limitations.

(R. at 25, emphasis added).

Later in his decision, the ALJ cited to the report of Dr. Mosier on January 22, 2001 (R. at 27-28).  That report stated the following:

> There were mild limitations in right shoulder motion. The opposite left shoulder had 100 degrees of external rotation, 90 degrees internal rotation. The right

12

> shoulder had 90 degrees of external rotation,
> 60 degrees internal rotation. There
> were no apprehension signs present. She is
> able to reach fully overhead. No
> significant impingement signs noted. There
> was mild discomfort with overhead
> reaching. She could easily get her hand
> behind her head. The right hand she was
> able to get behind her back to the lower
> thoracic segments, the left to the
> mid-thoracic segments. There were no areas of
> tenderness over the shoulder.
> Resisted strength in the upper extremity was
> normal. This included grip strength,
> biceps, triceps, abduction and external
> rotation strength. There was no scapular
> winging. No tenderness over the elbow.
> Negative Tinel sign. Negative Phalen test.

(R. at 226-227).

The ALJ did not agree with Dr. Mosier's opinion that plaintiff should avoid shoulder level reaching type activities except on occasion because the ALJ found that this opinion was not supported by the medical evidence.  It appears that the ALJ relied on Dr. Mosier's findings in January 2001 to reject the opinion of Dr. Mosier in July 2006 that she should avoid above-shoulder-level reaching type activities except on occasion.

The ALJ did not adopt Dr. Mosier's opinion that plaintiff should avoid repetitious bending and twisting activities because the ALJ determined that this limitation was not supported by the medical evidence.  Dr. Mosier indicated that repetitious bending and twisting activities should be avoided because he believed that these activities would "tend to aggravate the patient's associated degenerative processes of her spine" (R. at 323).

However, the ALJ failed to even mention the rationale put forward
by Dr. Mosier for his opinion that plaintiff should avoid
repetitious bending and twisting.  Furthermore, the ALJ failed to
indicate how this opinion by Dr. Mosier was not supported by the
medical evidence.  The ALJ failed to cite to any medical opinion
evidence disputing Dr. Mosier's assertion that repetitious
bending and twisting activities should be avoided because of his
belief that these activities would tend to aggravate the
patient's associated degenerative processes of her spine.  An ALJ
is not free to substitute his own medical opinion for that of a
disability claimant's treating doctors.  Hamlin v. Barnhart, 365
F.3d 1208, 1221 (10th Cir. 2004).  The ALJ is not entitled to *sua
sponte* render a medical judgment without some type of support for
his determination.  The ALJ's duty is to weigh conflicting
evidence and make disability determinations; he is not in a
position to render a medical judgment.  Bolan v. Barnhart, 212 F.
Supp.2d 1248, 1262 (D. Kan. 2002).  In the absence of any medical
evidence disputing the opinion of Dr. Mosier that repetitious
bending and twisting should be avoided because they would tend to
aggravate plaintiff's degenerative processes of her spine, the
court finds that the ALJ lacked substantial evidence to disregard
this opinion by Dr. Mosier.  Therefore, the case should be
remanded in order for the ALJ to give proper consideration to
this restriction by Dr. Mosier.

14

As noted above, the ALJ also discounted the opinion of Dr.
Mosier that plaintiff should avoid shoulder level reaching type
activities except on an occasional basis.  In doing so, the ALJ
cited to Dr. Mosier's report 5½ years earlier in which Dr. Mosier
indicated that plaintiff could reach fully overhead with only
mild discomfort, and that plaintiff's shoulder problem was
intermittent (R. at 27).  Although it could be argued that a
finding by Dr. Mosier from January 2001 cannot serve as a
legitimate basis for not agreeing with his medical opinion
expressed 5½ years later, the court can neither reweigh the
evidence nor substitute its judgment for that of the agency.
White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).

On the other hand, it is not clear from Dr. Mosier's August
2006 report if his reference that "such activities" would tend to
aggravate the patient's associated degenerative processes of her
spine is also meant to include his restriction that plaintiff
avoid above-shoulder-level reaching activities except on
occasion.  Dr. Mosier first mentioned limitations on above
shoulder level reaching activities, then he mentioned lifting
limitations, and then finally mentioned the need for plaintiff to
avoid repetitious bending and twisting.  He then stated that
"such activities" would tend to aggravate the patient's
associated degenerative processes of her spine.  Clearly this
rationale applies to the limitation on bending and twisting,

15

which immediately preceded it.  It is less clear if the earlier limitations also constitute "such activities."  If they do, then the ALJ should have considered Dr. Mosier's rationale for restricting plaintiff's limitations on above shoulder reaching.

The regulations indicate that the ALJ "will seek additional evidence or clarification from your medical source when the report form your medical source contains a conflict or ambiguity that must be resolved."  20 C.F.R. 404.1512(e)(1) (2008 at 360). Given the ambiguity in Dr. Mosier's 2006 report, the ALJ would be well advised on remand to clarify if the restriction on above shoulder reaching is because Dr. Mosier believes it would aggravate plaintiff's associated degenerative processes of her spine, and if so, to take that rationale into account when deciding what weight to accord to this opinion by Dr. Mosier. Furthermore, the ALJ should also consider asking Dr. Mosier if his findings in January 2001 conflict with his August 2006 opinion that plaintiff is restricted on above shoulder reaching.

Also included in the record before the Appeals Council is a detailed functional capacity evaluation dated June 19, 2007 (R. at 463-473).  Although the Appeals Council found that the additional evidence submitted did not provide a basis for changing the ALJ's decision (R. at 8), the evaluation indicates plaintiff is limited to occasional bending and twisting (1-33% of the day) (R. at 470).  This finding is fully supportive of Dr.

16

Mosier's opinion that plaintiff avoid repetitious bending and twisting, and provides clear medical evidence supporting Dr. Mosier's opinion on this subject.  This evaluation also states that plaintiff has less than sedentary ability to perform lifting at shoulder level or overhead, and states that plaintiff's work capacity is characterized by less than sedentary physical demand level for activity above the waist (R. at 470).  Again, this evaluation supports the restrictions set by Dr. Mosier regarding above shoulder reaching.  For this reason, the court does not agree with the Appeals Council that the medical evidence submitted after the ALJ decision does not provide a basis for changing the ALJ's decision.  See Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).  On remand, the ALJ shall consider the opinion of Dr. Mosier in light of the subsequent functional capacity evaluation.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on September 5, 2008.


                         s/John Thomas Reid
                         JOHN THOMAS REID
                         United States Magistrate Judge